Your Honor, Carl Gunn, representing Mr. Waters. I'm going to try to save two minutes for rebuttal, but I'll try to watch my time. This is a case, I think you can see it as, about two wrongs. First, it's about partially fixing the wrong of the grossly excessive crack guideline. Second, it's about not repeating the mistake of applying a career offender guideline that shouldn't have been applied in the first place. And it's important to understand that what we're talking about with respect to that mistake... You better lower the volume a little bit. It's okay, usually people talk too quietly. Your voice is fine. I think it's important with respect to that second wrong, as I put it, that we're not talking about going back and fixing it. We're talking about not repeating it as a way of avoiding applying the retroactive crack guideline. Can I just get you to focus on one thing that I'm trying to work my way through on, and then you can argue about... I'd rather focus on what Your Honor wants. Well, that's good. Okay, so as I understand the structure of the process on this retroactive application... It essentially, under 1B1-.10... It essentially says, okay, go back... You don't go back for a full resentencing. You go back and plug in to the sentencing guideline structure that was extant at the time... Statutory and everything else. And you now substitute in the new lower drug quantity guideline. You plug it in, and if that would result in a lower sentence, then you get the resentencing based on the lower amount. In the first go-around, the career offender guideline was in place... But the mandatory minimum of this provision wasn't triggered, because at that time, the crack cocaine guideline made it a point higher, as I understand. What I call the default offense level in the career offender guideline. So it didn't trigger it, but... Correct. Okay, so that issue wasn't triggered at the time. In particular, that guideline wasn't applied, that default. Okay, so then you go to the next... You go to the resentencing under the crack cocaine. Now it's... The drug guideline is lower, and it's flipped. So now, if that had been the case... That had been the posture at the original sentencing, the career offender default would have kicked in, correct? At that point. Yes, assuming the same mistake got made there. Well, whatever. I don't want you to jump to the... Right. I just wanted... Just the mechanics. I would put it a little bit differently, Your Honor, and I think my different perspective actually makes a difference. I think it's a two-step process, like Your Honor said. The first step is basically a jurisdictional question. Is the guideline that was applied changed? And then the second question is a doesn't matter question. Does some other guideline kick in now, that we're looking at the other guideline instead, that means it doesn't make any difference? If you look at it that way, then the guideline that actually was applied, which is the sentencing range or guideline for the crack plus the two for minor, that guideline was clearly changed. It was clearly reduced. It went down from 38 to 32. Well, that's one characterization, except that it was actually all run through the criminal guideline with regard to the... You're trying to divide it into pieces, because the criminal history definitely came out of the career criminal guideline. Correct. But the offense level... And the other only came out of the offense level because the career criminal guideline said so. Correct. It's certainly correct. So it was run through the career criminal guideline, and that's what the district court said you did. Right. Certainly the case that the two, if I call it the 2D1.1 guideline, it was actually 2D1.1 plus two under one of the Chapter 3 enhancements. The 2D1.1 guideline was clearly used only because it was sort of incorporated by reference through the career offender guideline. But it clearly was the guideline that was used to set the offense level, albeit through... But not the sentence, not the overall sentencing range, which is the ultimate question there. Correct. Excuse me. I'm sorry. Because the statute we're now dealing with talks about sentencing range, not guideline or offense level. The way I would put it and the way I see it is the sentencing range that was used was the sentencing range for criminal history Category 6 and the 2D1.1 offense level for a little more than one kilo of crack plus the 3D, I think it's one point... The 3D1.4, two levels for enhancement. So the sentencing range that was used was the sentencing range for the offense level based on those two guidelines and the criminal history Category 6. That sentencing range has been reduced because the offense level that got used, the offense level for 2D1.1 plus the 3D1.4, that's been reduced. That's the jurisdictional book. Then I think going back to Judge Fischer's sort of construction, you look at basically does... And it depends on how you read Dillon. I have given you my argument about Dillon says you don't look at any other guidelines, you just change the one that got used. But you don't really need to go there because when you look at the sort of second step of does it matter because some other guideline means it makes no difference? Then I think you're looking at the present and then I think we get to make our career offender point. What you look at is looking at things now. Does the career offender guideline in the words of the 1B1.10 commentary operate to say it makes no difference? Well, now we look at it and the career offender guideline doesn't operate. And we're not trying to re-litigate what was decided at the original sentencing when in fact it didn't make any difference. What we're saying is now it doesn't operate to say it makes no difference. And you have to look at whether in fact the career offender guideline operates now. And we're not talking about fighting issues about waiver and stuff and re-litigating something 10 years ago. And that's why I emphasized when I first talked about the two wrongs when I got up here. We're not asking you to correct the wrong from 10 years ago. We're asking you not to repeat it by doing it again by saying there's another guideline that says it doesn't make any difference. And so it's sort of like what you said, Judge Fischer, but I think it's a slightly different take on it. And it's certainly a take that results in more justice here, it seems to me. And not that that controls that the law says something different, but I think it's a reasonable construct of 1D1.10 in its application. It's a reasonable construct of that commentary that talks about whether another guideline operates to make the sentencing range the same. And going to you, Judge Berzon, your question, I mean, I really do think that, yes, it's the career offender guideline, but it's the career offender. It's 2D1.1 incorporated through that guideline, and so it's still 2D1.1. And that clearly was changed, of course. I have a couple minutes left. I'll save that for rebuttal unless there's other questions I should answer now. Thank you. Good morning, Your Honor. This is Rosalyn Wink of the United States. This case really comes down to the limited jurisdiction of 3582, which is not meant to allow the defendant to reopen determinations that is criminal history. It's a very simple calculation. You take the offense level, you subtract two levels from what it would be otherwise, and you leave all the other decisions the same as 1P1.10 specifies. It doesn't provide for resentencing hearing. It doesn't provide for re-litigating any other issues. It's very simply a sentencing modification. And defendant puts a large emphasis on whether or not the offense level is considered affected since the base is 38. It's not 37 as set forth in the career offender table. I don't think that matters in this particular case because what ultimately matters is the resulting range and not the particular offense level. And 3582 specifically says you can modify it if the sentence is based on a range that's subsequently lowered by amendment. And in this case — But strictly speaking, wasn't he sentenced to a term of imprisonment based on a sentencing range? Because his term of imprisonment was based on the sentencing range that came out of the crack cocaine guideline, wasn't it? It came out of the crack cocaine guideline, but then the 4B1.1 is applied after that. I understand that. But was he in fact sentenced to a term of imprisonment based on a sentencing range that was subsequently lowered? Yes. He was in fact based on the sentencing range that came out of the crack cocaine and that was subsequently lowered. So doesn't that literally apply? Well, I don't — I wouldn't agree with that because that's not what Wesson held. Well, Wesson had nothing — I don't think he has anything to do with this because in Wesson there wasn't this peculiarity of having incorporated the other guideline into this. Well, I mean, the last guideline that was applied was the career offender guideline. And, I mean, that's clear because his career — I mean, his criminal history was bumped from a 5 to a level 6. I understand that. But that's — I'm looking literally at what 3582 says. But literally — It doesn't talk about guidelines. It's the whole point. It talks about based on a — was he sentenced to a term of imprisonment based on a sentencing range? And that's what Wesson said. He said that the range was subsequently lowered. And in fact, it was. No? I don't — I don't agree with that. And that — the range was not lowered by the amendment. Because when you apply — when you apply the range and you apply the career offender provision, on top of that, the range comes out to be the same. So the range wasn't lowered. Guidelines, but it doesn't say guidelines. It says based on a sentencing range. What happened in the past? In other words, it is concerned with what happened and not what was — could happen. So it's saying what actually happened. What actually happened is that he was sentenced based on the crack cocaine range. That's what actually happened, even through incorporation. All right. But that's not the approach that, you know, Lanier, for example, or — I'm sorry? Lanier says to apply. It's to — it's to plug in how — it's to plug in what the offense level would have been and then to, on top of that, leave all the other guidelines decisions the same. So the question is, is to do a hypothetical and apply it as if — as if the amendment had been in place. I appear to be doing the hypothetical. I'm sorry? You're essentially doing the as if. I'm looking at it historically. And this is a positive. I'm not saying I — Okay. I mean, I'm saying historically, isn't that what happened? Wasn't he in fact sentenced based on the sentencing range that was then lowered? That factored into the calculation, but that was not the ultimate offense level that was used. I mean, it was the 4B1.1 guidelines that was used, not the 2D1.1. I mean, the 2D1.1 was used as an initial calculation, but because of his criminal history, you had to apply 4B1.1 after that. Okay. All right. And so — As I understand counsel's argument, if we're looking at — so let me step back. Your understanding is we go back and look at the calculations and recalculate based on the assumption that the crack cocaine level has been reduced. And if it had been reduced, then if it does not have the effect — the effect of lowering the defendant's applicable guideline range because of the operation of another guideline or statutory provision, then he doesn't get the benefit of it. Right. Now, if the career offender guideline wasn't — it was not triggered at the original sentencing, right? Because the drug offense was higher. Right. But now it would be triggered. Its mandatory provision would be triggered. And you're saying that that's the way it would have played — it would have played out such that at that point, the sentencing range would have been identical to what he was sentenced on, albeit you got there because of the drug offense. Now you get there because of the career offender offense. Right. Although I would just say that it was, in fact, triggered because of its criminal history, and it was just that it didn't use — It didn't have the effect. Right. And they didn't use the — it would not have used the one set forth in the table in 4B1.1. It would have used the alternate as specified in that guideline. And his argument is, well, if the career offender had been dispositive at the original, that is, if that was the one setting the range, then I would have been able to argue at that point that it should not be applied, given the de minimis amount of drugs, make the argument he's trying to make now. I think that's what he's trying to say. Well, I mean, I think he's trying to say you would just use 2D1.1 and you would not look at any of the other guidelines provisions that might apply otherwise, which, I mean, that's clearly not — I don't know what he's trying to say. Okay. What I'm trying to say is that if — without making that assumption, in other words, assuming that it is, in fact, the career or criminal guideline that was applied and that does apply, I still don't see why the statute doesn't, because it's not concerned with the guideline but with the — what sentencing range it was based on, doesn't apply. But, again, the range was not lowered because of the application of the career offender guideline. Well, the range that was actually used was lowered, because the range that was used was this range that came out of 2.2D. But the range that was actually used was based on his career offender status, because he had a criminal history of six that was used to determine that range. You know, obviously there are two — Sort of a split verdict or something. But it was partly based. And, you know, and I think when you apply procedurally, as it was in Lanier, in this case precedent, any way you calculate it after you apply the career offender guidelines, the range is still 360 to life. And, you know, apart from all of that, under the policy requirements of — But what difference does this all make? It only makes a difference if his second premise follows, right? The only reason this would ultimately make a difference is if his second premise, i.e., that he could then reopen to career or criminal — Right. — determination would follow. Right. That's the only way that it would make a difference. And 3582 just — I mean, it doesn't provide a vehicle for that. That would require the parties essentially to relitigate his criminal history. And, you know, as it shows in Cazares-Bravo, as it showed in your Martinez case, that requires the district court to look at charging documents and the plea agreement and the plea transcript to see specifically, you know, were these prior convictions predicate offenses. Well, that's what I was trying to extract. If you can clarify, maybe counsel will clarify on rebuttal, but the idea is that the career offender shouldn't operate on this resentencing. Now it shouldn't operate. Then it was not — it wasn't relevant or important because the drug, 2D, was the one that set the sentencing range. Well, I — Now it's — now you go back and it doesn't because then by the terms of 4D — or 4B, rather, that the career offender is the one that sets the sentencing range. So he's trying to knock that out. Well, I also wouldn't concede that the defendant is not a career offender. No, I understand that. I'm just trying to piece together the argument. Okay, fine. I think clothes are maybe not all the way there. Thank you. With respect to the first step, what I'm calling the jurisdictional step, I think the way Judge Berzona is articulating it is exactly what I'm trying to say, is the range that actually got used did get reduced, and that gives us the jurisdictional vote. Then the question — The problem is that if you don't go back and revisiting — the way I'm looking at it, which is that it was used but only through the career criminal, and the career criminal determination stands, you don't get any place. Right. And then you get to this — but I think the second step then is what that is, and that's — as the prosecutor put it, you sort of do this hypothetical. But I think you do the hypothetical now. The question is whether, in fact, the other guideline doesn't operate, is the word of the commentary. And, in fact, it doesn't operate because he wasn't a career offender. And the point I'm making is I'm not asking to relitigate something from 10 years ago. For one thing, 10 years ago, it wouldn't have mattered, as I noted. What I'm asking you to do is to litigate it now. I don't think, frankly, there's going to be any question. I mean, I think the case law I gave you is rather clear that he's not a career offender. I guess the government can fight about that on remand if it wants. But what I'm saying, Judge Berzon, is that operate now language in the commentary or this doing of the hypothetical, you do that sort of as of now, and that's not relitigating something. Well, it is relitigating. Well, I don't think it is in the sense of waiver and issues like that. I mean, I think what you have to ask now is, is there another guideline that means he gets the same sentence anyway? And the answer is there isn't because he's not a career offender. So, I mean, I don't know that I'd argue that. Excuse me, where do you get now? The word now isn't in there. I believe the language is, if I can pull out my copy of 1B1.10. You're looking at the commentary, right, the application note? Note 1A, and the language is, the amendment does not have the effect of lowering the defendant's applicable guideline range because of the operation of another guideline. It doesn't say anything about that. Correct. It also doesn't say anything about back at the time of the original sentencing. I think it's silent. I read that. You're right. It's a question of how you read it. I would read it the way it's suggested. Well, you're basically arguing that we look at this whole picture as if the change in the crack cocaine sentencing was operational now.  So you start off at this time and you take the guidelines as they would operate now. And that somehow, if there's a less severe range for crack cocaine now, that that would affect the career offender computation? Well, it affects the, there's two possible career offender computations. It would affect the career offender computation that was actually used. And the alternative career offender computation that would result in the same sentencing range doesn't actually apply because of the arguments I'm making. So I wouldn't argue that you look at the guidelines now. If the career offender guideline had been amended a year ago, I wouldn't be arguing that applies unless the sentencing commission has visibly made that retroactive. So I'm not arguing you apply the guidelines now in the sense of guidelines, if they exist now that didn't exist then. What I am arguing is you look at the guidelines then now, you look at the 2000 guidelines now as opposed to what the judge did 10 years ago that was, I think, wrong. Okay. All right. Thank you. Thank you. We're going to take a short break.
judges: Pregerson, Fisher, Berzon